Law Offices of Ariel Strauss
Ariel Strauss (Cal. Bar No. 232280)
92 Pine Hill Dr., El Sobrante, CA 94803
ariel@alegal.info
(310) 709-1213

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN KIRBY, an individual,<br><br>Petitioner,<br><br>vs.<br><br>CITY OF SAN MATEO, by and through the CITY COUNCIL OF THE CITY OF SAN MATEO; MATT FABRY, an individual, in his capacity as the Director of the Public Works Department of the City of San Mateo; and the SUSTAINABILITY & INFRASTRUCTURE COMMISSION OF THE CITY OF SAN MATEO,<br><br>Respondents,<br><br>CROWN CASTLE FIBER LLC, a New York limited liability company; and VERIZON WIRELESS,<br><br>Real Parties in Interest. | Case No. 3:25-cv-06165-JD<br><br>**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>[*Removed from the Superior Court of the State of California, County of San Mateo (Case No. 25-CIV-04679)*]<br><br>Complaint Filed:    June 20, 2025<br><br>Hearing Date: September 18, 2025<br>Time: 10:00am<br>Judge: Hon. James Donato<br>Ctrm: 11<br>Trial:                TBD |

# TABLE OF CONTENTS

I.   TABLE OF CONTENTS ................................................................................................... 2

II.   STATEMENT OF FACTS ............................................................................................... 4

III.   Legal Standard.................................................................................................................. 5

IV.   Argument.......................................................................................................................... 6

   A.   There Is a Strong California Public Policy Enabling Judicial Review to Correct Wrongly-Issued Land Use Permits........................................................................... 6

   B.   Crown Waived its Right to the Deemed Approved Permit and Should be Equitably Estopped from Repudiating the Permit it Obtained.......................................................... 7

   C.   Crown's Participation in the Appeal Process Resulted in Crown Obtaining a Permit Under San Mateo Chapter 17.10 ...............................................................................10

   D.   Crown Failed to Exhaust Administrative Remedies by Unnecessarily Attending the Appeal Hearing and then Inadequately Objecting to the Authority of the Commission...11

V.   Conclusion......................................................................................................................13

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil L.R. 7-4, Stephen Kirby, Petitioner, respectfully requests decision on the following issue:

Is the permit that the Crown Castle obtained to construct a wireless facility adjacent to 724 W. Poplar the Wireless Permit WC-2023-000200, which must comply with the City of San Mateo's standards promulgated pursuant to Municipal Code Chapter 17.10 subject to judicial review under Code of Civil Procedure section 1094,5, or is it a different permit obtained pursuant to Government Code section 65964.1?

Petitioner files this Memorandum of Points and Authorities in opposition to the Notice of Motion and Motion to Dismiss filed by Defendants Crown Castle Fiber LLC and GTE Mobilnet of California Limited Partnership d/b/a Verizon Wireless (collectively "Crown").

## I.     STATEMENT OF FACTS

In July 2023, Crown Castle submitted an application to the Public Works Department of the City of San Mateo ("City") to obtain a wireless communications facilities permit to construct and operate a cell antenna facility at 724 W. Poplar Ave. Due to plain and egregious City staff oversight, the Public Works Director issued a Wireless Communications Permit on February 7, 20025, the last day of the Federal Communications Commission ("FCC") shot clock period designating the presumptively reasonable time for the City to act on the application. The proposed cell tower antenna would protrude conspicuously from a rickety utility pole over the sidewalk and be obtrusively visible above Petitioner's hedge. Petitioner, who was not aware of the applicable tolling letters or shot clock calculations, (Verified Pet., ¶116) timely appealed pursuant to Chapter 17.10 of the City's Code to remedy the City's wrongful approval of a non-compliant design in an inappropriate location in violation of the City's design standards.

While awaiting an appeal hearing, on February 18, 2025, Crown Castle issued a deemed-approval letter invoking Government Code section 65964.1, claiming that the FCC shot clock had lapsed less than two weeks prior. (Crown MPA at 3.) However, rather than immediately exercising its rights granted by state law by insisting the City allow it to start construction, on March 9, 2025, Crown agreed to toll the City's deadline for contesting the letter and participated in the appeal hearing on March 26, 2025. The tolling letter to the City stating in pertinent part

> Crown Castle will participate virtually in the upcoming appeal hearings before the City's Sustainability and Infrastructure Commission. [¶] Without waiving any rights or remedies available to Crown Castle pursuant to applicable state and federal law, Crown Castle agrees to meaningfully participate in the City's appeal process. . . Lastly, to allow sufficient time for the CIC hearings to take place, Crown Castle agrees to toll the City's 30-day period(s) for

challenging the deemed-approved status of any of the applications identified below: . . . WC-2024- 000200 – SANMATEO_198M1[1]

(Crown RJN, Exh. C [Dkt. 17-3].)

Crown then participated fully in the appeal hearing held before the Sustainability and Infrastructure Commission ("Commission") on March 26, 2025, with the result that Crown's voluntary delay was more than three times the lapse that supposedly motivated Crown's invocation of Section 65964.1. At the hearing, Crown argued that its application met all the requirements of the Wireless Ordinance and Design Standards. The Commission denied the appeal, upholding the permit conditionally issued on February 7, 2025.[2] Crown now claims that "the City was deprived of any authority to take further administrative action on the Permit after Crown Castle deemed the Permit granted on February 18, 2025." (Crown MPA at 12.) As a result, it asserts that Petitioner's lawsuit to overturn the Wireless Communications Permit must be dismissed because "the Decision on which those Causes of Action are based is legally ineffective; there is no final action by the City for Petitioner to challenge. Crown Castle's deemed approved notice is the final action, and only the City had the ability to seek judicial review of that notice under Cal. Gov. Code § 65964.1(a)(3)(B), which it did not." (Crown MPA at 15.) However, in light of Crown's conduct, it did in fact accept a wireless permit governed by San Mateo Municipal Code Chapter 17.10 and which, in order to be valid, can only be issued in compliance with applicable City policies.

II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may only be granted if, with construing the facts in the light most favorable to the Petitioner, that it appears beyond a doubt

---

[1] The correct permit number is WC-2023- 000200—SANMATEO_198M1. This is an obvious a typographical error and the tolling letter intended to and did apply to the application at issue in this lawsuit.

[2] Crown asserts at length that final action occurred on April 1, 2025, when the written decision was issued, not on March 26, 2025, when the Commission voted. This is incorrect but also of no relevance to Crown's Motion to Dismiss.

that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### III.  ARGUMENT

#### A.  THERE IS A STRONG CALIFORNIA PUBLIC POLICY ENABLING JUDICIAL REVIEW TO CORRECT WRONGLY-ISSUED LAND USE PERMITS

Given the procedural posture of a motion to dismiss, all of Petitioner's allegations must be accepted as true and construed in the light most favorable to Petitioner. This means accepting that, under to the City's own policies, the wireless permit should not have been approved yet, according to Crown's Motion to Dismiss, residents would have no remedy.

City is authorized to enact ordinances that "express community intentions regarding urban form and design" for "outdoor public areas, including streets." Gov. Code § 65302.4. The purpose of the Wireless Ordinance is to:

> balance the benefits that flow from robust, advanced wireless services with the City's local values, which include without limitation, the aesthetic character of the City, its neighborhoods and community[ and] . . . protecting the City's visual character from potential adverse impacts or visual blight created or exacerbated by wireless communications infrastructure[.]

(Pet., ¶.17, quoting San Mateo Code § 17.10.010.)

"All the residents of the community have a protectable property and personal interest in maintaining the character of the area as established by comprehensive and carefully considered zoning plans [.]" *Petitt v. County of Fresno* (1973) 34 Cal. App. 3d 816, 822.

> Zoning laws concern a vital public interest—not one that is strictly between the municipality and the individual litigant. All the residents of the community have a protectable property and personal interest in maintaining the character of the area as established by comprehensive and carefully considered zoning plans in order to promote the orderly physical development of the district and the city and to prevent the property of one person from being damaged by the use of neighboring property in a manner not compatible with the general location of the two parcels. These protectable interests further manifest themselves in the preservation of land values, in esthetic considerations and in the desire to increase safety by lowering traffic volume.

*Schafer v. City of Los Angeles*, 237 Cal. App. 4th 1250, 1252

Generally, a permit enacted in violation of the City's laws must be reversed upon appropriate appeal. See Code Civ. Proc. 1094.5; *Smith v. County of Santa Barbara* (1992) 7 Cal. App. 4th 770, 773. There is a strong public policy favoring Petitioner retaining an avenue to ensure correct application of the City's laws. *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.*, 51 Cal. 4th 259, 270 (2011) (presumption of judicial review); see also Civ. Proc. § 10094.5.

## B. CROWN WAIVED ITS RIGHT TO THE DEEMED APPROVED PERMIT AND SHOULD BE EQUITABLY ESTOPPED FROM REPUDIATING THE PERMIT IT OBTAINED

Crown's argument focuses on rebutting the notion that shot clock lapse could have been cured. It argues that *Orsi v. City Council*, 219 Cal. App. 3d 1576 (1990) "is factually analogous deemed approval case that arose in the context of the Permit Streamlining Act (PSA)[.]" (Crown MPA at 12.) However, Crown misrepresents the case. Crown stated:

> Critically, the court rejected the city's claim that the developers' participation in the city council's public meetings after the deemed approval had waived or extended the mandatory six-month time limit and held that the city had no power to deny the application after deadline had passed.

(Crown MPA at 13.)

However, Crown ignores the particular and limited purpose of the *Orsi* applicant's participation. The *Orsi* court explains:

> City contends that plaintiffs did waive time when they agreed to take their item off the council's December 9, 1986, calendar so that the status of the newly enacted sewer moratorium could be clarified. Plaintiffs, however, requested that their application be placed "on the next available Council agenda for consideration." The next available council meeting was on December 23, 1986, three days *before* the expiration of the six-month deemed approval period. Under no circumstances can this be construed as an agreement to extend the time limits set forth in the Permit Streamlining Act.

*Id*. at 1587 (emphasis in original).

The court emphasized that the *Orsi* applicant sought to engage with the City process "*before*" the deemed complete deadline had lapsed. Crown then inserts its own construal of the case with brackets into a quote of the last sentence quoted above: "Under no circumstances can [participation in hearing] be construed as an agreement to extend the time limits." (Crown MPA at 13 (brackets by Crown).) The case does not stand for such a proposition.

Unlike in *Orsi*, where the applicant sought to participate during the applicable time to do so, here it is Crown's own affirmative, voluntary use of the City's appeal process that gives rise to Crown consenting to a permit with is subject to appeal. The other PSA cases that Crown cites, *Ciani v. San Diego Trust & Sav. Bank*, 233 Cal. App. 3d 1604, 1614 (1991) (specifically declining to decide whether a PSA deemed-approved permit can be challenged on appeal) and *Chino MHC, LP v. City of Chino*, 210 Cal. App. 4th 1049, 1076-1077 (2012), also do not involve affirmative conduct of the applicant prevailing in obtaining a permit with attributes it later decides it does not want.

This situation is similar to *Fleming Distribution Co. v. Younan*, 49 Cal. App. 5th 73 (2020). In opposition to an unpaid wage claim filed with the Labor Commissioner, the employer asserted that the parties signed an arbitration agreement and threatened to file a motion to dismiss but did not immediately do so. *Id*. at 77. Instead, 13 months later, the employer filed an answer to the Labor Commissioner asserting the defense that arbitration was the proper forum. A year later, the employer filed a motion to dismiss but the Labor Commissioner denied the motion advising that the employer had to seek a stay in superior court. However, the employer did not take that action and four months later the Commissioner issued a ruling in favor of the employee, whereupon the employer filed an appeal in superior court. In superior court, the employer filed a petition to compel arbitration, stay proceedings, vacate the Labor Commissioner's order, and dismiss the action,

claiming that throughout the Labor Commission proceeding it had asserted a right to arbitration and that the case should be dismissed. *Id*. at 78.

The superior court denied the petition, explaining that the employer "waived its right to arbitration by taking steps inconsistent with an intent to invoke arbitration, including delaying its request to the superior court until after a full hearing took place and the Labor Commissioner issued its order." *Id*. at 79. The court of appeal upheld denial of the petition. The court emphasized that the employer "fully participated in the hearing by presenting documentary evidence, witness testimony, and argument." *Id*. at 82. It concluded that to "properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the dispute." *Id*. at 73.

Waiver of an arbitration clause is also appropriate where the conduct is prejudicial in that "impairs an opponent's ability to use the benefits and efficiencies of arbitration." *Id*. at 83. Forcing a party to prejudicially incur monetary loss in attorneys' costs litigating to then only have the case re-routed to arbitration also favors a finding of waiver. *Id*.

While *Fleming Distribution Co.* involved a timeline applicable to labor law filings, it demonstrates that verbal protestation does not protect against waiver when a party acts inconsistently with that position in a manner that is determinantal to a counter party. A court possess the equitable power to hold a party to the venue that it in practice elects to use. That is the case here. Crown had an option to utilize a streamlined, no-hearing process that would not have incurred costs for any counterparties but it chose to forego that and engage in the City's appeal process "in good faith." <u>At the hearing it argued that the permit it now claims is irrelevant and it does not possess was correctly and validly issued</u>. The result is that it obtained the permit that comes with winning in that venue, including judicial review. "[T]he very essence of equitable estoppel is to prevent a party from blowing hot and cold and from taking advantage of his

inconsistent conduct to the detriment of another." *In re Marriage of Valle*, 53 Cal. App. 3d 837, 842 (1975).

### C. **CROWN'S PARTICIPATION IN THE APPEAL PROCESS RESULTED IN CROWN OBTAINING A PERMIT UNDER SAN MATEO CHAPTER 17.10**

Paragraph 121of the Verified Petition states: "Crown consented to the appeal hearing and accepted the Permit via the City's regular process, with all applicable conditions, instead of and in place of any permit that they contended they were entitled to as a matter of law under Section 65964.1." Crown does not dispute this fact. This alone should be dispositive.

Notably, even if Crown have obtained a statutory permit directly through the letter on February 18, 2025, any such purported "permit at law" had not vested at the time of the Sustainability and Infrastructure Commission hearings. The reason for this is that Crown did not undertake substantial work or incurred costs in reliance on that permit prior to attending the hearings. *Communities for a Better Environment v. South Coast Air Quality Management Dist.*, 48 Cal. 4th 310, 323 (2010). As a result, Crown would not have a protected property interest in retaining a permit with those specific attributes. Having gone through the full permit application and appeal process, the permit that Crown obtained is a conventional City permit, subject to judicial review. It is irrelevant that the City never contested the so-called-deemed approved permit (Crown MPA at 11) because Crown also never made use of that permit.[3]

The permit-at-law allowed by Section 65964.1 does not require any land use-type issuance by the locality. See *Ciani*, 233 Cal. App. 3d at 1614. Rather, all that Crown would have been required to obtain are those "related to either obstruction or safety in the public right-of-way[.]"

---

[3] Notably, Crown's tolling letter has no end date and presumably is still in effect today. (See RJB, Exh. C.)

Gov. Code § 65964.1(b). The permit that Crown introduces in its Request for Judicial Notice is the same "Wireless Communications Permit" conditionally issued by the Director and upheld by the Commission. (Crown MPA, Exh. A.)

Subsequent discussions between Crown and Public Works Department staff reinforce Crown's acceptance that the Commission's action was valid. On April 25, 2025, Crown's permitting manager sent a message to Public Works staff asking that "the city team please provide the formal wireless permit approval documents for these sites since the city preliminary approvals were upheld and reaffirmed by the commission?" (Petitioner RJN, Exh. A.)

### D. CROWN FAILED TO EXHAUST ADMINISTRATIVE REMEDIES BY UNNECESSARILY ATTENDING THE APPEAL HEARING AND THEN INADEQUATELY OBJECTING TO THE AUTHORITY OF THE COMMISSION

Crown states that its participation in the appeal process did not "nullify the deemed approved Permit." (Crown MPA at 11.) Crown fails to explain why participation in the hearing does not have this effect. Crown tries to cabin its participation in the Commission stating "Crown Castle informed the City before participating in the appeal hearing that it would participate solely as a show of good faith and transparency to the public." (Crown MPA at 10.) However, appeal hearings are not venues for public theater.

Nothing in the record indicates that Crown had to participate in the appeal hearing in order to gain the City's cooperation in constructing its facility. Crown does not make any such claim. Given the posture of the dispute, it must be accepted that the City *had not insisted on Crown's participation*. As a result, Crown could have, and should have, declined to attend the hearing it now claims was a sham.

Moreover, once it did attend, rather than consenting to participate, Crown should have asserted plainly that the Commission lacked authority to deny a permit. At the outset of the hearing,

11
PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS– CASE NO. 3:25-CV-06165-JD

Crown's representative stated as follows: "On February 18th, the applicant provided a notice of deemed approved status of these applications, and while our rights to enforce the deemed approved status under state law remain intact, we are here tonight in good faith to participate in the City's process just as we have in the past." (See Decl. of A. Strauss, ¶ 4.) Crown's statement includes an asserted reservation of rights, its meaning is highly ambiguous. In order to preserve a right and exhaust administrative remedies, "the objections must be sufficiently specific so that the agency has the opportunity to evaluate and respond to them." *Evans v. City of San Jose*, 128 Cal.App.4th 1123, 1140 (2005).

The notion that Crown possessed an unassailable permit is inconsistent with holding any hearing before the Commission. A plain meaning interpretation of "good faith" participation is that Crown intends to accept the determination of the Commission and is arguing about the relevant permit that it actually intends to possess. However, once the Commission has power over its permit, then it is not a deemed-approved permit and it is not fulfilling the expedited function assigned to by the California statute.

Attending a publicly noticed hearing in which the Commissioners and all participants act as though they were appealing to the authority of the City's appointed body is not a showing of good faith but a wasteful mockery. If Crown believed the residents would benefit from a moot court or description of its application, it could have hosted a conference or design review. Instead, Crown wasted public resources and caused the Petitioner to incur unnecessary attorney's fees on a process it claims is futile. (See Decl. of A. Strauss, ¶ 6.)

The purpose of Section 65964.1 is to enable applicants to obtain permits expeditiously. Crown could have begun work more quickly without the hearing process. However, that is not what it chose to do. Crown's permit is, therefore, subject to attack in the writ petition brought by Petitioner.


## IV. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that Crown's Motion to Dismiss be denied.

August 26, 2025

                                          Respectfully submitted,

                                          _____
                                          Ariel Strauss
                                          Attorney for Petitioner, Stephen Kirby