1  Thomas Scott Thompson (*Pro Hac Vice pending*)
   Ryan T. Dougherty (*Pro Hac Vice pending*)
2  SThompson@mintz.com
   RTDougherty@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   555 12th Street NW, Suite 1100
4  Washington, D.C. 20004
   Tel:  202-434-7300
5  Fax: 202-434-7400

6  Paige E. Adaskaveg (SBN 330551)
   peadaskaveg@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   44 Montgomery Street, 36th Floor
8  San Francisco, CA 94104
   Tel:  415-432-6000
9  Fax: 415-432-6001

10 Attorneys for Real Parties in Interest/Defendants
   CROWN CASTLE FIBER LLC AND VERIZON WIRELESS

11

12                    **UNITED STATES DISTRICT COURT**

13                    **NORTHERN DISTRICT OF CALIFORNIA**

14 | STEVEN KIRBY, an individual, | Case No. 3:25-cv-06165-JD |

15 | Petitioner, | **DEFENDANTS CROWN CASTLE'S AND VERIZON WIRELESS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

16 | vs. |  |

17 |  | **[FED. R. CIV. P. 12(b)(6)]** |

18 | CITY OF SAN MATEO, by and through the CITY COUNCIL OF THE CITY OF SAN MATEO; MATT FABRY, an individual, in his capacity as the Director of the Public Works Department of the City of San Mateo; and the SUSTAINABILITY & INFRASTRUCTURE COMMISSION OF THE CITY OF SAN MATEO, | Date:   September 18, 2025<br>Time:   10:00 a.m.<br>Judge:  Hon. James Donato<br>Ctrm:   11 |

19

20

21 |  | Complaint Filed:   June 20, 2025<br>Trial:             TBD |

22 | Respondents, |  |

23

24 | CROWN CASTLE FIBER LLC, a New York limited liability company; and VERIZON WIRELESS, |  |

25

26 | Real Parties in Interest. |  |

27

28

Defendants Crown Castle Fiber LLC ("Crown Castle") and GTE Mobilnet of California Limited Partnership d/b/a Verizon Wireless ("Verizon") (collectively, "Defendants") submit this Reply to Petitioner's Opposition to their Motion to Dismiss the Complaint (Dkt. No. 20).

## I.   INTRODUCTION

Defendants' Motion presents a straightforward case: Government Code § 65964.1 provides the City must act on Crown Castle's wireless permit application within the timelines set forth in federal regulations; the City did not take final action within those timelines; and Crown Castle notified the City in writing that the permit was deemed approved pursuant to Government Code § 65964.1. Petitioner cannot and does not contest those points, which conclusively establish that Crown Castle's permit was approved as a matter of law on February 18, 2025. Defendants also demonstrated that the City's subsequent hearing and action purporting to grant a permit to Crown Castle were legally ineffective under established case law, mooting Petitioner's claims. (*See* Dkt. 16).

Petitioner's Opposition does not rebut any of Defendants' points. Petitioner presents no legal or persuasive support for his theories that Crown Castle waived its deemed approved permit by, among other things: not "immediately" starting construction; voluntarily participating in the permit appeal hearing brought by Petitioner and conducted by the City; and tolling the City's opportunity to contest the deemed approved notice letter until after the appeal hearing. Under established law, Defendants did not waive their deemed approved permit, and the City's actions subsequent to the deemed approved notice are moot. In short, Defendants' voluntary participation in the appeal after the deemed approved letter is irrelevant because the City lost jurisdiction over Defendants' application on February 18, 2025. Petitioner's attempt to distinguish on-point case law relies on an improperly narrow reading of the cases. As Defendants demonstrated, *Orsi v. City Council*, 219 Cal. App. 3d 1576 (1990), squarely contradicts Petitioner's argument that Crown Castle waived its deemed approval rights under Government Code § 65964.1 by participating in the City's subsequent hearing. Moreover, after Defendants filed their Motion, the federal Fourth Circuit Court of Appeals confirmed the same point in a case involving a parallel Virginia statute. *Tillman Infrastructure LLC v. Bd. of Supervisors*, No. 23-1094, 2025 Lexis 372984 (4th Cir. Aug. 13, 2025).

Petitioner's arguments claiming the situation is unfair are inaccurate and irrelevant. The Legislature enacted the deemed approved remedy with full knowledge that it would cut off the ability of local governments and citizens to object to wireless facility applications. Indeed, forcing prompt action and eliminating protracted administrative appeals was the point. The fact that the deemed approval moots Petitioner's administrative appeal is a function of the statute that this Court cannot change. Moreover, Petitioner's argument that Crown Castle should be punished for wasting Petitioner's time ignores the fact that the City and Petitioner, not Crown Castle, had sole control over whether the March 26 hearing would take place, regardless of Crown Castle's participation.

Finally, nothing about a permit deemed approved by operation of law pursuant to Government Code section 65964.1 improperly eliminates judicial review. Petitioner lost the ability to seek judicial review once Crown Castle delivered the deemed approved letter, but the City still had standing to challenge the deemed approval letter during the 30-day period afforded by statute or during the additional time afforded by Crown Castle's agreement to extend the City's deadline to challenge. Therefore, public policy is not harmed where the City had a sufficient opportunity to challenge the deemed approval letter.

## II.     ARGUMENT

In their Motion, Defendants established that the deadline for the City to take its final action on Crown Castle's permit application was February 7, 2025, that the City had not taken its final action by that date, and that on February 18, 2025, Crown Castle issued to the City written notice that the permit was deemed approved as a matter of law pursuant to Government Code § 65964.1. Dkt. 16 at 3. Petitioner does not contest any of those showings. Instead, Petitioner argues Crown Castle waived its deemed approval rights and advances a series of essentially equitable arguments for why Crown Castle should be deprived of that statutory right. In addition to the fact that Petitioner lacks standing to challenge the deemed approved permit, his arguments are meritless and unsupported.

///

///

///

A.     **The City Lost Jurisdiction Over the Permit Application, and Crown Castle Did Not Waive Its Deemed Approval Rights.**

In their Motion, Defendants addressed Petitioner's theory that by participating in the City's March 26 hearing, Crown Castle effectively waived the deemed approved permit. As Defendants demonstrated, under established California law, when Crown Castle issued the deemed approval notice on February 18, the City lost jurisdiction over the matter, rendering its resolution of Petitioner's administrative appeal moot. Dkt. 16 at 12-13 (citing *Chino MHC, LP v. City of Chino*, 210 Cal. App. 4th 1049, 1076-1077 (2012); *Ciani v. San Diego Trust & Sav. Bank*, 233 Cal. App. 3d 1604, 1613 (1991); *Orsi v. City Council*, 219 Cal. App. 3d 1576, 1587-1588 (1990)). In particular, Defendants explained that *Orsi* stands for the dual proposition that once a permit is deemed approved by operation of law, the reviewing agency's subsequent administrative actions have no effect, and the applicant's voluntary participation after the deemed approval deadline does not automatically or impliedly waive or extend the mandatory time period. Dkt. 16 at 12-13. Petitioner's attempts to respond to these authorities are unavailing.

          **1.     Petitioner Fails To Distinguish Caselaw Supporting Defendants' Motion**

Petitioner's arguments regarding *Orsi* misrepresent the case's facts and holding. Petitioner argues that the plaintiff/applicant in *Orsi* did not waive time limits under the Permit Streamlining Act when it asked that its application be placed on the next available Council agenda because that next available agenda was three days before the December 26, 1986 expiration of the Permit Streamlining Act deadline. Dkt. 20 at 7 (citing *Orsi*, 219 Cal.App. 3d at 1587). However, Petitioner ignores the fact that in *Orsi* the city and applicant continued to engage in administrative processes for months after the December 26, 1986 Permit Streamlining Act deadline. *Id.* at 1581-1582. After the December 1986 council meeting that Petitioner focuses on, the city held subsequent hearings on January 6, 1987, January 21, 1987, February 25, 1987, and March 17, 1987. *Id.* It was those subsequent administrative proceedings the court was referring to when it held "[w]hen the council failed to approve or disapproved plaintiffs' project by December 26, 1986, it was approved by operation of law. Subsequent acts of the City culminating in the eventual 'denial' of plaintiffs' application were to no

effect." *Id.* at 1588. Moreover, in *Orsi* the applicant had cooperated with the city by resubmitting its application long after the application had been deemed complete under law. The court rejected the argument that as a result the applicant waived the "deemed complete" status. *Id.* at 1586 ("The fact that plaintiffs were cooperative with the City should not preclude them from the benefits that they had already obtained from the Act"). Accordingly, *Orsi* is squarely on point with this case.

Moreover, after Defendants filed their Motion, the Fourth Circuit issued a decision that further supports Crown Castle's position. *See Tillman Infrastructure LLC v. Bd. of Supervisors*, No. 23-1094, 2025 Lexis 372984, at \*9 (4th Cir. Aug. 13, 2025). In *Tillman*, the applicant for a wireless tower challenged the county's denial of its permit, asserting claims under 47 U.S.C. § 332(c)(7) as well as under a Virginia statute, Va. Code Ann. § 15.2-2316.4:1(D), that allows the applicant to deem the application approved by operation of law if the local government fails to act in compliance with the FCC Shot Clock time periods.

The district court held that the permit had been deemed approved as a matter of law before the county had issued its denial, and the Fourth Circuit affirmed, stating, "[w]e think the district court correctly entered a declaratory judgment because the Board no longer retains discretion over Tillman's application." *Id.* at \*9. The court noted that state law allowed the county to approve or disapprove permit applications within 150 days, after which law instructs that the application is "deemed approved." Thus, "a locality must act within the statutorily defined deadline or lose the ability to act at all." *Id.* at \*10 (citations omitted). "Because the County has failed to timely act, it lost the ability to do so." *Id*. Notably, Tillman only raised the deemed approval *after it filed suit* and did not raise the issue at any point during the permit review process with the county. Therefore, *Tillman* is persuasive authority from a federal Circuit Court that a municipality is stripped of its jurisdiction once the permit is deemed approved by operation of law and participation in the administrative process after the deadline is not a waiver of the deemed approval.

Petitioner's reliance on *Fleming Distribution Co. v. Younan*, 49 Cal. App. 5th 73 (2020), is misplaced. *Fleming* was a wage dispute case in which the employer waited years to raise affirmative defenses and other arguments that it could have raised on day one. *Fleming* is distinguishable from

1  this case because the court held that the employer did not "timely raise the defense" that the parties

2  were bound by an arbitration agreement and did not timely move to dismiss on those grounds.  *See*

3  *Fleming Distribution Co. v. Younan*, 49 Cal. App. 5th 73, 77-79 (2020).  Unlike the employer in

4  *Fleming*, Crown Castle sent the deemed approved letter *prior to the appeal*, and Petitioner does not

5  assert that Crown Castle did not timely assert its right to a deemed approved permit.  There is no

6  dispute between the parties that Crown Castle timely noticed the deemed approval.  *Fleming* is

7  unrelated to the question in this case and therefore has no bearing on this case.

8        Petitioner's attempt to distinguish *Ciani* and *Chino MHC* on the grounds that the cases do not

9  involve "affirmative conduct of the applicant prevailing in obtaining a permit" is meritless.  Dkt. 20

10 at 8.  There is no basis for Petitioner's assertion that Crown Castle "affirmative[ly], voluntary[ily]

11 use[d] . . . the City's appeal process" giving rise to Crown Castle "consenting to a permit [which] is

12 subject to appeal." Dkt. 20 at 8. Crown Castle did not "affirmatively use" the City's appeal process,

13 as Petitioner asserts.  Crown Castle made clear that it would participate solely as a show of good faith

14 and transparency to the public and its participation was "[w]ithout waiving any rights or remedies

15 available to Crown Castle pursuant to applicable state and federal law." Dkt. 17-3 at 2.  Moreover, it

16 was Petitioner, not Crown Castle, that initiated the City's administrative appeal process.  There is no

17 basis for Petitioner's fictional narrative that Crown Castle "affirmatively" used the City's appeal

18 process to obtain a permit.

19       **2.**    **Petitioner's Vested Rights Theory Is Inapplicable**

20       Petitioner argues that because Crown Castle did not immediately use the deemed approved

21 permit by promptly installing the facilities, the "permit at law" did not vest before the City's decision

22 on Petitioner's appeal.  There is no support for Petitioner's theory that a deemed approved permit

23 under Section 65964.1 can be negated if the local government takes action before the applicant builds

24 the facility.  This theory would render the statute meaningless because it would allow a city to negate

25 the deemed approval by simply issuing a denial the next day, before the applicant could install its

26 facilities. Section 65964.1 does not create a race to build that the applicant must win to perfect its

27 deemed approved permit.

28

In addition, Petitioner does not support this argument with any directly applicable case law, and his analogy to vested rights doctrine caselaw is unavailing. *Communities for a Better Environment v. South Coast Air Quality Management Dist.*, 48 Cal. 4th 310, 323 (2010), is inapplicable because no laws have changed and nothing is preventing Defendants from installing the facilities. The doctrine of vested rights protects established rights from being retroactively nullified by subsequent legal changes by the same government entity that created the initial rights. Here, the deemed approved permit was established by the state Legislature precisely to deprive the local government of further authority. Moreover, Petitioner's analogy to a vested rights case is misplaced because the "subsequent legal change"—in this case, the City's approval of the permit and denial of Petitioner's appeal—did not nullify Crown Castle's rights in any way.

### B. Defendants' Voluntary Participation in the Appeal Did Not Cause Any Alleged Detriment to Petitioner.

Petitioner calls Crown Castle's participation in the appeal process a "wasteful mockery" and states that Crown Castle "wasted public resources and caused Petitioner to incur unnecessary attorney's fees on a process it claims is futile." Dkt. 20 at 12. Petitioner argues that Defendants should have declined to attend the hearing, refused to cooperate with the City, and immediately installed the communications equipment. *See* Dkt. 20 at 11-12. Indeed, Petitioner argues that Defendants should be estopped from claiming that they possess a deemed approved permit as punishment. *Id.* These arguments are meritless.

First, Petitioner cannot rely on equitable theories to overcome the statutory authority created by the Legislature. Had the Legislature intended that an applicant could lose its deemed approved remedy as a result of equitable theories, it would have so provided in Section 65964.1. It did not. Moreover, even if equitable theories were a potential basis for challenge to a deemed approved permit under Section 65964.1, the Legislature granted only the City standing to challenge the deemed approved permit. Cal. Gov. Code § 65964.1(a)(3)(B).

Petitioner's equitable arguments also ignore that *Petitioner* filed the administrative appeal and the *City* administered the appeal process. Crown Castle had no power to stop Petitioner from

appealing and no power to stop the City from holding the appeal hearing. Crown Castle notified the City in writing of the deemed approved permit on February 18, 2025, yet the City proceeded to schedule and hold the appeal hearing on March 26, 2025. Crown Castle was not the driver of the appeal, so Crown Castle cannot be faulted for the administration of an appeal that Petitioner and the City pursued. For the same reason, Crown Castle's participation in the appeal did not waste public resources or cause Petitioner to incur attorney's fees. There is every indication that regardless of whether Crown Castle participated, the City would have conducted the appeal and Petitioner would have incurred attorney's fees pursuing the appeal. Petitioner cannot credibly claim he incurred attorney's fees at Crown Castle's expense, and any arguments Petitioner made on appeal would have been made regardless of whether Crown Castle participated or not.

There is also no basis for Petitioner's theory that Crown Castle should have refused to attend the appeal hearing, stopped communicating with the City, and "immediately" begun installation. Dkt. 20 at 4. Crown Castle attempted to work in good faith with the City and community members by providing information. This participation should be lauded as an effort to avoid unnecessary litigation and a thoughtful attempt to conserve the City's limited resources. *See Orsi*, 219 Cal.App. 3d at 1586 ("The fact that plaintiffs were cooperative with the City should not preclude them from the benefits that they had already obtained from the Act.").

Crown Castle explicitly stated that it was under no obligation to participate and that its participation would be "[w]ithout waiving any rights or remedies available to Crown Castle pursuant to applicable state and federal law." Dkt. 17-3 at 2. Accordingly, Crown Castle's participation cannot be mistaken as a waiver of its deemed approved permit or an acknowledgement that the City retained jurisdiction over the permit application. Crown Castle's participation was continued work with a valuable municipal partner with whom Crown Castle has an incentive to remain on good terms.[1]

///

///

---

[1] Crown Castle has numerous other wireless permit applications pending with the City for identical communications equipment installations in other public right of way locations.

### C. Crown Castle Did Not Accept A Wireless Permit Issued By The City's Denial Of Petitioner's Administrative Appeal

There is also no basis for Petitioner's assertion that "in light of Crown's conduct, it did in fact accept a wireless permit" governed by the City's Municipal Code after the City issued its written decision denying Petitioner's administrative appeal. Dkt. 20 at 5. As a threshold matter, there is no difference between the permit deemed approved under Section 65964.1 and a permit issued by the City. Section 65964.1 provides that when a local government fails to timely act on an application for a wireless permit, the applicant can deem the "application" approved as a matter of law. Cal. Gov. Code § 65964.1(a). The permit that is "deemed approved" *is* the wireless permit that the applicant applied for with the full force and effect as if issued by the local government. *See T-Mobile West, LLC v. City and County of San Francisco*, 2021 U.S. Dist. LEXIS 51789, *14-15 (N.D. Cal. Mar. 19, 2021) (holding a wireless permit deemed approved pursuant to 47 C.F.R. § 1.6100 is, in law, as effective as permits granted by the city).

Second, Petitioner cites no facts in the Complaint or otherwise that demonstrate "conduct" by Crown Castle following the City's final action denying Petitioner's appeal that shows that Crown Castle waived its deemed approved permit and "accepted" a separate permit from the City.[2] Petitioner's argument that the "permit" Crown Castle "introduces in its Request for Judicial Notice is the same 'Wireless Communications Permit' conditionally issued by Director and upheld by the Commission (Crown MPA, Exh. A)" is wrong. Dkt. 20 at 11. Crown Castle's Exhibit A is its *application* submitted to the City, not the final permit. However, as noted above, Section 65964.1 provides that the permit applied for is the permit that is deemed approved. Petitioner's attempt to draw a distinction is baseless.

Moreover, if accurate, Petitioner's argument that Crown Castle has been issued two permits—one pursuant to Cal Gov. Code section 65964.1 and one pursuant to San Mateo Municipal Code

---

[2] Crown Castle has not filed an answer to the Complaint, so it is unclear how Petitioner can claim Crown Castle "does not dispute" Paragraph 121 of the Complaint, which states that Crown Castle "accepted the Permit via the City's regular process . . . instead of and in place of any permit that they contended they were entitled to as a matter of law under Section 65964.1." Moreover, Petitioner's conclusory statements—which Crown Castle denies—are not facts demonstrating "conduct."

17.10—ultimately supports Defendants' Motion. *See* Dkt. 20 at 4-5, 8. If anything, Petitioner's scenario of two permits admits that Crown Castle possesses a deemed approved permit. As a result, even if Petitioner ultimately wins (which it should not) and the "second permit" issued by the City is invalidated, Crown Castle still has the deemed approved permit. Thus, the deemed approved permit moots Petitioner's challenge to what it now calls the second permit, precisely as Defendants argued in their Motion. Dkt. 16 at 12.

Finally, as demonstrated in Defendants' simultaneously filed Opposition, Petitioner's Request for Judicial Notice (Dkt. 21) should be denied as not satisfying the requirements for judicial notice under Federal Rule of Evidence 201, but even if accepted, the statement and email do not support his assertions. Even if counsel for Petitioner's unofficial quotation of a Crown Castle statement at the March 26, 2025, hearing was accurate, it supports Crown Castle's position, stating that "our rights to enforce the deemed approved status under state law remain intact. . . ." Dkt. 21 at 3. The April 25, 2025 email from a Crown Castle employee is irrelevant and cannot waive a statutory right formally invoked by the company. Dkt. 21 at 8. At most, the series of emails reflects Crown Castle seeking to obtain a physical copy of the wireless permit that was deemed approved, as well seeking the additional encroachment permit that was needed before Crown Castle could install its facilities. *Id.*

### D. Government Code § 65964.1 Grants Only The City Standing To Appeal A Deemed Approval.

Petitioner's policy arguments that California law favors retaining a right to judicial review inaccurately suggest there is no right to judicial review of a deemed approved wireless facility permit. That is not the case, and as Petitioner acknowledges, the law provides the City a 30-day period to challenge Crown Castle's deemed approval letter. Cal. Gov. Code § 65964.1(a)(3)(B). Crown Castle even agreed to extend this 30-day period to afford the City additional time to challenge the deemed approval letter.

Nothing about Section 65964.1 strips the City of its right to judicial review, which is in line with California public policy as stated by Petitioner. To the extent Petitioner is arguing that public policy favors *him* retaining the right to judicial review, that is incorrect. The Legislature made a

choice in Section 65964.1 to give the City the right to appeal deemed approved notices—not every citizen. If the permit was incorrectly deemed approved, the City could challenge it. However, the City did not even given an extension of time.

### III.     CONCLUSION

For the reasons above, the Court should reject the arguments in Petitioner's Opposition and dismiss the Complaint in its entirety with prejudice.

Dated: September 2, 2025                                    Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY
 AND POPEO, P.C.

*/s/ Paige E. Adaskaveg*
Thomas Scott Thompson (*Pro Hac Vice pending*)
Paige E. Adaskaveg
Ryan T. Dougherty (*Pro Hac Vice pending*)

Attorneys for Real Party in Interest/Defendant
CROWN CASTLE FIBER LLC and GTE
MOBILNET OF CALIFORNIA LIMITED
PARTNERHSHIP d/b/a VERIZON WIRELESS