Thomas Scott Thompson (*appearance Pro Hac Vice*)
Ryan T. Dougherty (*appearance Pro Hac Vice*)
SThompson@mintz.com
RTDougherty@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, D.C. 20004
Tel: 202-434-7300
Fax: 202-434-7400

Paige E. Adaskaveg (SBN 330551)
peadaskaveg@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel: 415-432-6000
Fax: 415-432-6001

Attorneys for Real Parties in Interest/Defendants
CROWN CASTLE FIBER LLC AND VERIZON WIRELESS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN KIRBY, an individual,<br><br>        Petitioner,<br><br>   vs.<br><br>CITY OF SAN MATEO, by and through the CITY COUNCIL OF THE CITY OF SAN MATEO; MATT FABRY, an individual, in his capacity as the Director of the Public Works Department of the City of San Mateo; and the SUSTAINABILITY & INFRASTRUCTURE COMMISSION OF THE CITY OF SAN MATEO,<br><br>        Respondents,<br><br>CROWN CASTLE FIBER LLC, a New York limited liability company; and VERIZON WIRELESS,<br><br>        Real Parties in Interest. | Case No. 3:25-cv-06165-JD<br><br>**DEFENDANTS' OPPOSITION TO PETITIONER'S NOTICE AND MOTION FOR REMAND**<br><br>[*Removed from the Superior Court of the State of California, County of San Mateo (Case No. 25-CIV-04679)*]<br><br>Hearing Date: October 23, 2025<br>Time:     10:00 a.m.<br>Judge:    Hon. James Donato<br>Ctrm:    11, 19th Floor<br>          450 Golden Gate Ave.<br>          San Francisco, CA 94102<br><br>Complaint Filed:    June 20, 2025<br>Trial:           TBD |

## <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED.................................................................. vi

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

    I.     THE COURT HAS SUBJECT MATTER JURISDICTION...................................2

        A.    Federal Law Governing Local Government Consideration Of
            Wireless Permits ...................................................................................2

        B.    The Notice Of Removal Was Not Deficient And The Court Looks To
            The Face Of The Complaint For Subject Matter Jurisdiction......................4

        C.    Removal Was Proper Under The Substantial Federal Question
            Doctrine...............................................................................................6

            1.    The Substantial Federal Question Doctrine ...................................6

            2.    The Second Cause Of Action Necessarily Raises An Actually
                Disputed, Substantial Federal Issue. ................................................7

            3.    Both Claims Require Resolution Of Whether City Violated the
                60-Day FCC Shot Clock .................................................................9

            4.    Removal Is Proper Under The Grable/Gunn Factors....................10

        D.    The Court Has Supplemental Jurisdiction Over The First Cause Of
            Action...............................................................................................13

    II.    PLAINTIFF IS NOT ENTITLED TO RECOVER EXPENSES, COSTS,
          AND ATTORNEYS' FEES ...........................................................................14

CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ARCO Envtl. Remediation, L.L.C. v. Department of Health & Envtl. Quality*,
   213 F.3d 1108 (9th Cir. 2000) ...................................................................................6

*Brennan v. Southwest Airlines Co.*,
   134 F.3d 1405 (9th Cir. 1998) ...................................................................................6

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987)....................................................................................................6

*City of Portland v. United States*,
   969 F.3d 1020 (9th Cir. 2020) ................................................................................3, 8

*Cox Communs. PCS, Ltd. P'ship v. City of San Marcos*,
   204 F. Supp. 2d 1272 (S.D. Cal. 2002)......................................................................4

*Empire HealthChoice Assur., Inc. v. McVeigh*,
   547 U.S. 677 (2006)..................................................................................................13

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)..................................................................................................14

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)............................................................................................ *passim*

*Gunn v. Minton*,
   568 U.S. 251 (2013)..................................................................................7, 10, 11, 13

*Hopkins v. Walker*,
   244 U.S. 486 (1917)....................................................................................................6

*Hornbuckle v. State Farm Lloyds*,
   385 F.3d 538 (5th Cir. 2004) ...................................................................................14

*James W. v. City & Cty. of S.F.*,
   No. 21-cv-02370-EMC, 2022 U.S. Dist. LEXIS 89012 (N.D. Cal. May 17, 2022)...............13

*Kinetic Sys. v. Fed. Fin. Bank*,
   895 F. Supp.2d 983 (N.D. Cal. 2012) ........................................................................5

*Lippitt v. Raymond James Fin. Servs.*,
   340 F.3d 1033 (9th Cir. 2003) ...................................................................................6

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005)..................................................................................................14

iii

*Malloy v. Regents of the Univ. of Cal.*, No. 19-cv-07995 SBA, 2021 U.S. Dist.
    LEXIS 182668 (N.D. Cal. Aug. 18, 2021) ................................................................14

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., No. 23*-1226,
    2025 WL 1716136 (U.S. June 20, 2025) .............................................................3, 12

*Merrell Dow Pharms., Inc. v. Thompson*,
    478 U.S. 804 (1986)..........................................................................................9, 10

*MetroPCS, Inc. v. City & Cty. of San Francisco*,
    400 F.3d 715 (9th Cir. 2005) ..............................................................................3, 8

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007) ....................................................................................10

*Milwaukee v. Cement Div., National Gypsum Co.*,
    515 U.S. 189 (1995)...................................................................................................14

*New Cingular Wireless PCS, LLC v. Cty. of Marin Cal.*,
    No. 20-cv-07915-SI, 2021 U.S. Dist. LEXIS 31556 (N.D. Cal. Feb. 19, 2021) ......................4

*Rains v. Criterion Sys. Inc.*,
    80 F.3d 339 (9th Cir. 1996) ......................................................................................6

*T-Mobile USA, Inc. v. City of Anacortes*,
    572 F.3d 987 (9th Cir. 2009) ....................................................................................8

*Valdes v. Wal-Mart Stores, Inc.*,
    199 F.3d 290 (5th Cir. 2000) ..................................................................................14

**Statutes**

28 U.S.C. § 1331................................................................................................10, 15

28 U.S.C. § 1441......................................................................................................6

28 U.S.C. § 1367.................................................................................................13, 15

28 U.S.C. § 1442......................................................................................................5

28 U.S.C. § 1446......................................................................................................4

28 U.S.C. § 1447......................................................................................................14

47 U.S.C. § 332................................................................................................ *passim*

Cal. Gov. Code § 65964.1................................................................................1, 9, 11

**Other Authorities**

47 C.F.R. § 1.6003 ........................................................................................... *passim*

N.D. Cal. Civil Local Rule 7-3 ..................................................................................................1

*Accelerating Wireless Broadband Deployment by Removing Barriers to
    Infrastructure Investment*,
    33 FCC Rcd 9088 (2018) ......................................................................................................3

*In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*,
    24 FCC Rcd 13994 (2009) ....................................................................................................3

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil L.R. 7-4, Defendants Crown Castle Fiber LLC ("Crown Castle") and GTE Mobilnet of California Limited Partnership d/b/a Verizon Wireless[1] ("Verizon") (collectively, "Defendants") jointly by and through this Motion respectfully request decision on the following issues:

1.      Does the Court have jurisdiction pursuant to 28 U.S.C. § 1331 and the substantial federal question doctrine to resolve the first and second causes of action in Plaintiff/Petitioner Stephen Kirby's ("Plaintiff" or "Petitioner") Complaint, which necessarily require resolution of federal questions under the federal Telecommunications Act of 1996 ("the Communications Act") at 47 U.S.C. § 332(c)(7)(B)(i)(II) and 47 U.S.C. § 332(c)(7)(B)(ii), regulations implementing the Communications Act, such as 47 C.F.R. § 1.6003, and Ninth Circuit case law affirming the Federal Communications Commission's guidance on the Communications Act and implementing regulations?

2.      In the alternative, may the Court retain supplemental jurisdiction over the first cause of action pursuant to 28 U.S.C § 1367(a) over Plaintiff's state law claims?

3.      Should the Court deny Plaintiff's request for attorneys' fees, costs, and expenses because Defendants had an objectively reasonable basis to remove this case to federal court?

---

[1] Petitioner incorrectly named "Verizon Wireless."  The proper party name is GTE Mobilnet of California Limited Partnership d/b/a Verizon Wireless.

DEFENDANTS' OPPOSITION TO PETITIONER'S NOTICE AND MOTION FOR REMAND – CASE NO. 3:25-CV-06165

Pursuant to L.R. 7-3(a), Defendants/Real Parties in Interest Crown Castle Fiber LLC ("Crown Castle") and GTE Mobilnet of California Limited Partnership d/b/a Verizon Wireless ("Verizon") and Defendant/Respondent City of San Mateo (the "City") (collectively, "Defendants") oppose the Notice of Motion and Motion for Remand (Dkt. No. 26 (the "Motion")) filed by Plaintiff/Petitioner Stephen Kirby ("Plaintiff" or "Petitioner").

## INTRODUCTION

The Court has jurisdiction and should deny remand pursuant to the substantial federal question doctrine because Plaintiff's substantive claims, challenging the City's action in this case, depend on resolution of issues under the federal Communications Act that are substantial, necessary to the outcome of the claims, actually in dispute, and will not upset the federal-state balance. The Motion's insistence that this is an "exclusively state law matter" is a fiction the Court should reject. Plaintiff repeatedly recognizes in the Complaint that federal law governing local control over personal wireless services facilities under the Communications Act, 47 U.S.C. § 332(c)(7)(B), controls the issues in this case. The City has incorporated the federal law standards into its Code governing the application at issue in this case, and those federal standards were central to Plaintiff's administrative appeal below. Accordingly, resolution of Plaintiff's claims fall squarely within the substantial federal question doctrine.

The substantial federal question doctrine provides that this Court has jurisdiction to resolve federal issues that are substantial, necessary to the outcome of the case, actually in dispute, and will not upset the federal-state balance. Although the Plaintiff's claims are ostensibly brought pursuant to state law, their resolution necessarily requires proper application and interpretation of federal laws, regulations, guidance, and case law. The Complaint acknowledges that federal standards are "incorporated into" the San Mateo Municipal Code ("SMMC") and that the SMMC does not simply adopt federal "terminology." Therefore, no part of Plaintiff's second cause of action can be resolved without necessarily requiring resolution of federal law issues.

In addition, both of Plaintiff's causes of action necessarily raise and require resolution of whether the permit was deemed approved, rendering the order appealed a nullity. Under Gov't Code

DEFENDANTS' OPPOSITION TO PETITIONER'S NOTICE AND MOTION FOR REMAND –
CASE NO. 3:25-CV-06165

§ 65964.1, if the City failed to act within the time established in Federal Communications Commission ("FCC") regulations, 47 C.F.R. § 1.6003, Crown Castle can deem the application approved.  As alleged in the Complaint, Crown Castle notified the City that the application was deemed approved because the City failed to act within the time under federal law.  Whether the City failed to timely act necessarily requires resolution of federal law under 47 C.F.R. § 1.6003.  And contrary to Plaintiff's argument, the issue is not merely Plaintiff's preemptive response to an anticipated defense.  Plaintiff must establish that the City decision he challenges is a valid final action of the City.  Whether the permit was already deemed approved as a matter of law before the City acted is a necessary element of Plaintiff's claim, not merely a defense.

For these reasons, the Court should deny Plaintiff's remand motion and retain subject matter jurisdiction to adjudicate the federal questions raised by the Complaint.  Even if the Court declines to retain jurisdiction, Plaintiff is not entitled to its costs because Crown Castle had objectively reasonable bases for seeking removal.

## ARGUMENT

## I.     THE COURT HAS SUBJECT MATTER JURISDICTION

### A.     Federal Law Governing Local Government Consideration Of Wireless Permits

As the Complaint recognizes and explains on pages 7-10, the interpretation of the federal Communications Act and the FCC Shot Clock Rules are fundamental issues in this case.

First, Section 332(c)(7)(B) of the Communications Act imposes specific substantive and procedural limits on the authority of local governments, such as the City, in their evaluation of applications to install personal wireless facilities, such as the Small Wireless Facility sought in Crown Castle's permit application.  47 U.S.C. § 332(c)(7)(B)(i)(II); *see also* Compl. ¶¶ 31-49.  Section 332(c)(7)(B)(i)(II) of the Act provides that a city's denial of a wireless permit cannot "prohibit or have the effect of prohibiting the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II) (the "effective prohibition" clause).  This section functions to prevent localities from impeding the national interest in deploying personal wireless services.

Historically, the Ninth Circuit utilized a two-part test for evaluating whether a permit denial

would result in an effective prohibition of wireless services: (a) whether there is currently a significant gap in personal wireless service, and (b) whether the proposed facility is the least intrusive means of remedying that gap. *See, e.g., MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 731-735 (9th Cir. 2005). However, in 2018, the FCC issued a Declaratory Ruling (the "*FCC 2018 Order*" or what Plaintiff calls the "*Small Cell Order*") clarifying the legal standard applicable to effective prohibition claims. *See Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶ 37 (2018), *aff'd, City of Portland v. United States*, 969 F.3d 1020, 1035 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2855 (2021). The FCC explained that the two-part test used by courts, including the Ninth Circuit, was incorrect (*Id*. ¶¶ 34-36) and that "an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id.* ¶ 37. This includes not only filling a service gap but also improving service, densifying a network, or adding network capacity. *Id*. In rejecting the two-part effective prohibition test that had previously been used by courts, including the Ninth Circuit, the FCC concluded that such an approach reflected an "unduly narrow reading of the statute and outdated view of the marketplace." *Id*. ¶ 40. The *Small Cell Order* was affirmed on appeal by the Ninth Circuit. *City of Portland,* 969 F.3d at 1035. Under the principle of *stare decisis*, *City of Portland* is binding on this Court. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226, 2025 WL 1716136, at *6 n.3 (U.S. June 20, 2025).

Relatedly, the FCC Shot Clock Rules require local governments to act on wireless permit applications within a reasonable period of time, so as to prevent undue delay in final administrative actions. 47 U.S.C. § 332(c)(7)(B)(ii); *see also* Compl. ¶¶ 50-52. The FCC has adopted regulations defining reasonable times for local governments to act on wireless permit applications known as the Shot Clock Rules. 47 C.F.R. § 1.6003. Since at least 2009, the FCC has set time limits for local authorities to act on applications to deploy wireless facilities. *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 FCC Rcd 13994, 14012 (2009). In 2018, the *Small Cell Order* broadened the application of the Shot Clock Rules and shortened the time limits, specifying that state and local governments now have 60 days to decide applications for installations

1    on existing infrastructure. *The Small Cell Order* explained that the shorter time periods were

2    warranted because Section 332(c)(7)(B)(i)(II) was violated if the local government's denial

3    "materially inhibited" the provision of personal wireless services, including when delays on an

4    application decision were so serious they would "virtually bar providers from deploying wireless

5    facilities." *Small Cell Order* at ¶ 126. The Ninth Circuit also affirmed the FCC's new Shot Clock

6    Rules on appeal. *See City of Portland*, 969 F.3d at 1044. Therefore, under the Shot Clock Rules,

7    there is a 60-day shot clock for small wireless facilities installed on an existing structure, such as

8    Crown Castle's permit at issue in this case. 47 C.F.R. § 1.6003.

9         The shot clock begins on the day after the date when the application was submitted and

10   includes any "pre-application period asserted by the siting authority." 47 C.F.R. § 1.6003(e). A

11   challenge to a municipal permitting decision, or an appeal of the denial of that challenge, such as the

12   administrative appeal filed by Petitioner in this case, does not toll or restart the shot clock. *See New

13   Cingular Wireless PCS, LLC v. Cty. of Marin Cal.*, No. 20-cv-07915-SI, 2021 U.S. Dist. LEXIS

14   31556, at *11 (N.D. Cal. Feb. 19, 2021); *Cox Communs. PCS, Ltd. P'ship v. City of San Marcos*, 204

15   F. Supp. 2d 1272, 1277 (S.D. Cal. 2002). Once the application is submitted, the shot clock begins

16   and may only be tolled if the municipality notifies the applicant within 10 days that the application is

17   incomplete, or it may be extended by agreement of the parties. 47 C.F.R. § 1.6003(d)(1).

18        **B.     The Notice Of Removal Was Not Deficient And The Court Looks To The Face Of
                   The Complaint For Subject Matter Jurisdiction**
19

20        Plaintiff mistakenly focuses on the contents of Crown Castle's Notice of Removal (Dkt. # 1),

21   as if the Motion to Remand were a motion to dismiss, testing the face of Crown Castle's submission.

22   *See* Mot. at 7, 10. Plaintiff recognizes that under 28 U.S.C. § 1446(a), the notice of removal need

23   only contain a "short and plain" statement of the grounds for removal, and it need not include detailed

24   legal argument. Mot. at 7. The ten-page Notice clearly satisfied those requirements, identifying both

25   Plaintiff's explicit and substantial federal questions necessarily raised by Plaintiff's Complaint. Dkt.

26   No. 1 ¶¶ 4, 7-12. And although not explicitly raised as a cause of action, a necessary element of

27   Plaintiff's claims requires Plaintiff to demonstrate that the City's challenged decision was a final

28

4

1    action of the City.  Otherwise, his claims are moot.  To do determine if the City's decision was the

2    final action, the Court must determine whether the City issued a final decision on Crown Castle's

3    permit application before Crown Castle notified the City that the shot clock had run pursuant to the

4    FCC's regulations, whether Crown Castle correctly calculated the shot clock pursuant to FCC rules,

5    and whether Crown Castle waived its right to a deemed approved permit by voluntarily participating

6    in the City's administrative appeal process.  *See* Complaint ¶¶ 50-52, 94-96, 116-122.  The Notice

7    identified these substantial federal questions as ones that necessarily require the Court to make

8    determinations under federal law.  *See* Dkt. No. 1 ¶¶ 5, 13-14.

9          Plaintiff's reference to *Kinetic Sys. v. Fed. Fin. Bank*, 895 F. Supp.2d 983 (N.D. Cal. 2012),

10   and its statement that the Notice of Removal is "facially deficient," are inapt.  *Kinetic* involved

11   removal under 28 U.S.C. § 1442 which governs actions against federal agencies and depends on

12   allegations of facts from beyond the complaint to establish that the agency was entitled to remove.

13   *Kinetic Systems*, 895 F. Supp. 2d at 991.  Defendants did not remove on § 1442 grounds, so that

14   portion of *Kinetic's* analysis is inapplicable.  Moreover, Plaintiff ignores the *Kinetic* court's holding

15   that "the defect in the removal notice is merely a defect of form that does not strip this Court of

16   jurisdiction."  *Id.* at 993.

17         Ultimately, Crown Castle's Notice stated the grounds for removal. The Notice stated that

18   Plaintiff's claims both explicitly and implicitly depend on and require resolution of federal law, and

19   the Notice included a short plain statement discussing these grounds for removal.  *See, e.g.,* Dkt. #1

20   at ¶¶ 4-5, 12-14 (asserting second cause of action fundamentally requires resolution of federal law

21   and citing Compl. ¶¶ 34-52, 97-98, 111-112, 151(a)-(k); asserting Complaint also implicitly seeks a

22   holding that permit was not "deemed approved' by operation of law under 47 C.F.R. § 1.6003 and

23   the *Small Cell Order* implementing that regulation and citing Compl. ¶¶ 52, 94, 119). Plaintiff's

24   attempt to focus on the content of Crown Castle's Notice of Removal rather than on Plaintiff's

25   Complaint is misplaced and unavailing, and even if accurate, is a defect of form that does not strip

26   this Court of jurisdiction.  *See Kinetic*, 895 F. Supp.2d at 993.

27

28

**C.    Removal Was Proper Under The Substantial Federal Question Doctrine**

1.    *The Substantial Federal Question Doctrine*

Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. §§ 1331, 1441. This provision for federal question jurisdiction is ordinarily invoked when a plaintiff pleads a cause of action created by federal law. However, there is another longstanding variety of federal "arising under" jurisdiction that holds federal question jurisdiction will lie over state law claims that implicate significant federal issues. *See e.g., Hopkins v. Walker*, 244 U.S. 486, 490-491 (1917). Federal question jurisdiction over state-law claims lies where the "state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1042 (9th Cir. 2003). The Supreme Court explained that the "substantial federal question" doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

A state law claim implicates a substantial federal question when: (1) "a substantial, disputed question of federal law is a *necessary* element of . . . the well-pleaded state claim," *Rains v. Criterion Sys. Inc.,* 80 F.3d 339, 345 (9th Cir. 1996) (internal citation omitted) (emphasis in original), or the claim is an "inherently federal claim" articulated in state-law terms, *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998); or (2) "the right to relief depends on the resolution of a substantial, disputed federal question," *ARCO Envtl. Remediation, L.L.C. v. Department of Health & Envtl. Quality,* 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citation omitted). No specific recipe exists for evaluation of these issues. The Court may look at any number of factors in any particular case to decide whether a claim "arises under" federal law. *See Lippitt*, 340 F.3d at 1043. However,

the Supreme Court has articulated that the substantial federal question doctrine applies when a complaint raises federal issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable*, 545 U.S. at 310.

> 2. *The Second Cause Of Action Necessarily Raises An Actually Disputed, Substantial Federal Issue.*

Federal question jurisdiction exists for Plaintiff's second cause of action—in which Plaintiff challenges the merits of the City's Decision—because the right to relief and the relief sought depend on the resolution of substantial, disputed federal questions. The allegations in the second cause of action make clear that resolution of Plaintiff's challenge to the City's Decision depends on whether Crown Castle demonstrated an effective prohibition of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), which has been incorporated into the City's Code. For example, Plaintiff explicitly alleges in the second cause of action that:

> [t]he facility is not eligible for a Limited Exception because:
>
> a) Crown has not established that the proposed facility qualifies as a 'personal wireless service facility' as required by Design Standards, Required Findings 1(A).
> . . .
> e) the Commission failed to make any finding that a Limited Exception is 'necessary to avoid an effective prohibition of the applicant's personal wireless services.'. . .
> f) Crown has not established that is its providing 'personal wireless services.'
> g) Crown did not allege any 'significant gap' in 'personal wireless services' as the term has been used in Ninth Circuit case law.
> h) Crown has not satisfied the significant gap-least intrusive means standard required by Ninth Circuit case law.
> i) Crown also did not establish a 'material inhibition' as required by the FCC Small Cell Order.
> j) Crown did not (a) provide valid evidence that it is in fact enhancing, densifying, expanding, or introducing new services or (b) that such activities are 'material.'
> k) Crown has not established that a Limited Exception is 'necessary to avoid an effective prohibition of the applicant's personal wireless services.'"

Compl. ¶ 151(a), (e)-(k). These allegations all necessarily require resolution of an effective prohibition claim under 47 U.S.C. § 332(c)(7)(b)(i)(II). Moreover, these allegations are in addition to the extensive allegations throughout the Complaint that reveal that the "effective prohibition" question was central to the administrative proceeding, including argument from Plaintiff challenging

the application based on federal law.  *See, e.g.,* Compl. ¶¶ 97-99 (Plaintiff's counsel submitted letter "explaining that the Application did not demonstrate that the services to be provided constitute 'personal wireless services' or that denial would result in an effective prohibition under either the Ninth Circuit 'significant gap' test or FCC's 'material inhibition' test" and submitted materials on whether there is a significant gap in service); ¶¶ 111-112 (noting Plaintiff's counsel disputed Crown Castle's testimony regarding the Ninth Circuit's significant gap test and that denial of the application would result in an effective prohibition under the *Small Cell Order*); ¶ 114(a)-(f) (disputing that Crown Castle's application presents information that shows a significant gap in service or how the Proposed Tower would remedy that significant gap).  Plaintiff's argument that the federal law issues are not necessary is not credible given the text of the Complaint.

Even the allegedly non-federal issues identified in the Complaint are actually related to and necessarily raise the federal effective prohibition issue.  For example, Plaintiff argues he can succeed if Crown Castle's application was incomplete.  Mot. at 12.  However, all of the items allegedly missing from or deficient in the application are items relevant to evaluating whether there is a significant gap in service and whether the proposed facility is the least intrusive means of remedying the gap, under the old Ninth Circuit standard or the material inhibition standard under the *Small Cell Order*.  Compl. ¶ 150(a)-(d); *see, e.g., MetroPCS*, 400 F.3d at 734 (establishing the significant gap and least intrusive means test); *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 997-98 (9th Cir. 2009) (addressing least intrusive means); *City of Portland*, 969 F.3d at 1034-35 (acknowledging "the continuing validity of the material inhibition test").  Under the old Ninth Circuit test, a detailed statement of the technical objectives for the proposed wireless facility and why the proposed location and configuration are necessary, Compl. ¶ 150(b), are relevant to both the gap in service (the technical objectives) and whether the facility is the least intrusive means of remedying it.  A Network Map, *id.* ¶ 150(c), clearly concerns the issue of wireless coverage (*i.e.*, gap in service), and an Alternative Site Analysis of less obtrusive sites, *id.* ¶ 150(d), clearly addresses the least intrusive means issue.  The allegations may not use the words "gap in service" or "least intrusive means" from the Ninth Circuit cases Plaintiff asserts should control, but they are, nonetheless, the facts that would relate to those

1   issues.  Thus, there are no "*other requirements totally unrelated to* the interpretation or existence of

2   an effective prohibition as the term is used in federal law," as Plaintiff argues.  Mot. at 12.

3          Thus, a substantial, disputed question of federal law is a necessary element of the stated claim,

4   and the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a

5   federal forum may entertain without disturbing any congressionally approved balance of federal and

6   state judicial responsibilities."  *Grable*, 545 U.S. at 310, 314.

7                  3.      *Both Claims Require Resolution Of Whether City Violated the 60-Day FCC
                           Shot Clock*
8

9          Though not plead as a separate cause of action, a necessary element of both of Plaintiff's

10  causes of action is that the City Decision challenged by Plaintiff was the valid final action of the City.

11  Under Government Code § 65964.1, if the City did not act within the time set forth in FCC regulation

12  47 C.F.R. § 1.6003, Crown Castle can deem the application approved, which would deprive the City

13  of authority to then later grant or approve the application.  If that occurred, the Decision challenged

14  by Plaintiff in this case would be a nullity.  Recognizing this, Plaintiff alleges that Crown Castle

15  notified the City that the application was deemed approved under Government Code § 65964.1 and

16  47 C.F.R. § 1.6003, but Plaintiff argues that Crown Castle's participation in the subsequent City

17  hearing waived the deemed approval.  Compl. ¶¶ 116-121.

18         Thus, Plaintiff's allegations require, as a threshold matter, a determination of whether Crown

19  Castle's permit was deemed approved under Cal. Gov. Code § 65964.1, which, in turn, necessarily

20  requires adjudication of whether the City violated the federal 60-day shot clock imposed by 47 C.F.R.

21  § 1.6003.  Cal. Gov. Code § 65964.1(a); *see* Compl. ¶¶ 50-52, 94-96.  In addition, whether Crown

22  Castle's participation in the City's hearing extends the "shot clock" for City action under 47 C.F.R.

23  § 1.6003, waives the shot clock also raises federal law issues.

24         The federal questions raised by these allegations are substantial, disputed issues that are

25  necessary to the outcome of this case, and ones that Congress intended should be decided by federal

26  courts. *See Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise

27  Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)) ("a state law cause of action

28

may arise under federal law where 'the vindication of a right under state law necessarily turn[s] on some construction of federal law.'"); *see also, e.g.*, *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law"). Indeed, they are threshold issues, which is why Defendants have made them the subject of a Motion to Dismiss. *See* Dkt. # 16.

Plaintiff's assertion that a determination of federal law as an element of a state claim does not create federal question jurisdiction under *Merrell Dow* ignores the fact that in *Grable* the Supreme Court rejected that interpretation of *Merrell Dow*. In *Grable*, the Court took the view that "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but *not dispositive of*, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable*, 545 U.S. at 318 (emphasis added). The governing rule, the Court held, is that federal courts have jurisdiction if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 314.

### 4. *Removal Is Proper Under The Grable/Gunn Factors*

Contrary to Plaintiff's argument, application of the *Grable* factors, as applied in *Gunn*, supports substantial federal question jurisdiction in this case. Plaintiff mischaracterizes *Gunn*, which ultimately supports jurisdiction in this case.

#### a. *The Federal Issues Are Necessarily Raised*

As in *Gunn*, resolution of the federal issues will necessarily require application of federal law to Plaintiff's case. *See* 568 U.S. at 258. As demonstrated above, adjudication of Plaintiff's second cause of action necessarily requires application and resolution of federal law. *See* Compl. ¶¶ 145-154 ("Crown did not allege any 'significant gap' in 'personal wireless services' as the term has been used in Ninth Circuit case law;" "Crown has not satisfied the significant gap-least intrusive means standard required by Ninth Circuit case law;" "Crown also did not establish a 'material inhibition' as required

by the FCC Small Cell Order.").  Plaintiff cannot ignore the allegations of the Complaint, which present the federal effective prohibition issue as central to whether the City properly granted Crown Castle's permit.  And contrary to Plaintiff's argument, the federal issues are necessary to it prevailing; all of the alleged failures under the City's Code fundamentally depend on resolution of issues under 47 U.S.C. § 332(c)(7)(B)(i)(II), even if they do not explicitly reference the federal standards.  *See* Compl. ¶¶ 150-151.

Likewise, for both causes of action, Plaintiff must demonstrate that Crown Castle's permit was not deemed approved, which also necessarily requires application of federal law and regulations, including 47 C.F.R. § 1.6003, which is explicitly incorporated into Gov. Code § 65964.1.  Indeed, resolution of this issue in Crown Castle's favor will be dispositive, mooting Plaintiff's other claims.  *See* Dkt. #16.  For this reason, Defendants moved to dismiss the case even before Plaintiff filed this Remand Motion.  *See id.*  The "case within a case" label is irrelevant to this point, as *Gunn* makes clear.  *See Gunn*, 568 U.S. at 261-262.

b.    *The Federal Issues Are Actually Disputed*

It is also clear that the federal law issues are actually disputed.  Regarding the effective prohibition standard and the evidence presented by Crown Castle to satisfy that standard, Plaintiff states that Crown Castle "has not established that a Limited Exception is 'necessary to avoid an effective prohibition of the applicant's wireless services.'"  *See* Compl. ¶ 151(k).  Plaintiff also argues that Commission "failed to make any finding that a Limited Exception is 'necessary to avoid an effective prohibition of the applicant's personal wireless services.'"  *Id.* at 151(e).  Additionally, Plaintiff argues that Crown Castle is not eligible for a permit because it has not presented sufficient evidence to satisfy the prior federal "significant gap" test (*Id.* at 151(g)-(i)), while Defendants ask the Court to find that Crown's evidence was sufficient under both the old significant gap test and the "material inhibition" test required by the *Small Cell Order* and affirmed by the Ninth Circuit.  Thus, there is undoubtedly an actual dispute about both the applicable federal standard and whether there is sufficient evidence to satisfy that standard.

Likewise, there is also an actual dispute about whether the City acted within a reasonable amount of time to issue the permit, as required by the FCC Shot Clock Rules. *See* Compl. ¶¶ 50-52, 94-96, 116-121; Dkt. # 16 at 7-12. Plaintiff disputes that Crown Castle has correctly calculated the FCC Shot Clock period in its deemed approved notice letter, disputes that the acted "within a reasonable period of time in accordance with the time periods and procedures established by applicable FCC rules," and argues that Crown Castle waived its statutory right to a permit deemed approved by operation of law when it participated in the City's administrative appeal as a matter of good faith. *See* Compl. ¶¶ 116-121. However, Plaintiff acknowledges that Crown Castle contends its permit was deemed granted by operation of law on February 18, 2025 because it was issued prior to the City taking its final administrative action as required by 47 C.F.R. § 1.6003. *See id.* at ¶ 94. The Complaint, and Crown Castle's Motion to Dismiss on this issue, make clear there is an actual, genuine dispute about the scope of 47 C.F.R. § 1.6003 and whether an administrative action taken after Crown Castle issued its deemed granted notice letter means the City still acted within a reasonable amount of time. *See* Dkt. # 16 at 12-15. Contrary to Plaintiff's assertions, the dispute concerns what a city must do to timely take its final action under 47 C.F.R. § 1.6003 and 47 U.S.C. § 332(c)(7)(B)(ii) and whether the holder of permit may waive their statutory right to the permit by voluntarily engaging with the city administratively after expiration of the shot clock. The fact that state or local law may come into play does not change the fundamentally federal questions in dispute.

### c.    *The Federal Issues Are Substantial*

Plaintiff's argument that the federal issues are not "substantial" because they are not important to the federal system as a whole (Mot. at 16-17) is untenable. For example, Plaintiff disputes Crown Castle's assertion that the Ninth Circuit "significant gap" test no longer applies to evaluating whether a permit denial would constitute an effective prohibition of personal wireless services under the *Small Cell Order's* "material inhibition" test. Comp. ¶¶ 111-112. Put simply, the Complaint explicitly seeks and requires resolution of whether the FCC's *Small Cell Order* controls versus pre-2018 Ninth Circuit case law. The controlling applicability of federal agency rulings is so substantial to the federal system that it was recently addressed by the Supreme Court. *See McLaughlin Chiropractic*, 2025

WL 1716136, at *4.  Accordingly, the federal issues are unquestionably substantial.  *See Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006) (analyzing *Grable*, 545 U.S. at 313).

Plaintiff's characterization of *Gunn* is misplaced.  The Court in *Gunn* emphasized that the application of federal patent law in that case was not substantial "[b]ecause of the backward-looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense." *Gunn*, 568 U.S. at 261.  Here, the application of the effective prohibition issue and Shot Clock regulations is not hypothetical.  They are raised on the face of the Complaint as determinative to Plaintiff's claims.

> d.    *The Federal Issues Will Not Upset The Balance Of Federal And State Relations That Congress Intended*

The Court should retain jurisdiction to resolve the important federal issues in the second cause of action and in the FCC Shot Clock dispute and doing so will not upset the federal-state balance. Here, the balance favors federal jurisdiction because an issue of primary importance in this litigation is the correct effective prohibition standard under Section 332(c)(7)(B)(i)(II) of the Communications Act and FCC regulation 47 C.F.R. § 1.6003.  A federal court is best positioned to fully and comprehensively adjudicate this issue to ensure the Ninth Circuit case law remains clear and consistent with existing precedent and FCC guidance.  The risk of an adverse state law judgment would present a difficult split between federal and state court guidance, encouraging forum shopping between state and federal courts for parties seeking to exploit this difference.

**D.    The Court Has Supplemental Jurisdiction Over The First Cause Of Action**

To the extent it does not have substantial federal question jurisdiction over the first cause of action, it is appropriate for the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  That cause of action arises from the same set of operative facts, seeks recovery for the same alleged harm, and involves the same parties.  In short, Plaintiff's request to strike the permit Decision as erroneously based on the 2021 version of the San Mateo Municipal Code is so closely related to second cause of action and the implicit request to hold that the permit was not granted by operation of law that it makes sense for this Court to adjudicate that issue concurrently for purposes of efficiency and consistency.  Such a decision would be consistent with other rulings in this District.  *See James*

*W. v. City & Cty. of S.F.*, No. 21-cv-02370-EMC, 2022 U.S. Dist. LEXIS 89012 at *37 (N.D. Cal. May 17, 2022) (extending supplemental jurisdiction to the plaintiff's claims not arising under federal law); *Malloy v. Regents of the Univ. of Cal.*, No. 19-cv-07995 SBA, 2021 U.S. Dist. LEXIS 182668 (N.D. Cal. Aug. 18, 2021).

## II.    PLAINTIFF IS NOT ENTITLED TO RECOVER EXPENSES, COSTS, AND ATTORNEYS' FEES

Contrary to Plaintiff's argument, even if the Court grants the Motion, Defendants should not be required to pay Plaintiff's costs associated with moving to remand.  As the Supreme Court has made clear, the standard for awarding fees turns on the reasonableness of the removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 711 (2005).  Absent unusual circumstances, courts may award attorney's fees under 28 U.S.C. § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  *Id.* (emphasis added).  When an objectively reasonable basis exists, fees should be denied.  *See, e.g., Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in each case.  When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994); *see also Milwaukee v. Cement Div., National Gypsum Co.*, 515 U.S. 189, 196, n. 8 (1995) ("[A]s is always the case when an issue is committed to judicial discretion, the judge's decision must be supported by a circumstance that has relevance to the issue at hand").

Facing substantial questions of federal law in the Complaint, including explicit references to and requests for relief involving the Communications Act, the Small Cell Order, and Ninth Circuit case law, Defendants had an objectively reasonable basis to remove this matter.  *See* Dkt. # 1.  Even if the Court ultimately holds that the Complaint does not necessarily turn on questions of federal law, the Complaint facially invokes the Communications Act, federal regulations implementing the Communications Act, and the *Small Cell Order* in seeking relief against Defendants.  The Complaint also asks the Court to interpret, and in some instances, overturn existing Ninth Circuit case law

construing aspects of the Communications Act.  *See* Complaint ¶¶ 129, 137, 148, 157-159, 167-173, 175-180.  Defendants had an objectively reasonable basis for removal in light of the face of the Complaint and cases applying the substantial federal question doctrine.

Plaintiff is the master of the Complaint, which facially invokes federal law and asserts claims arising under federal law.  Defendants' removal was objectively reasonable, no unusual circumstances are present here, and therefore Plaintiff is not entitled to recovery of costs.

## CONCLUSION

For the foregoing reasons, the Court has jurisdiction pursuant to 28 U.S.C. § 1331. Accordingly, Plaintiff's Motion for Remand should be denied, the Court should retain supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, and Plaintiff should bear their own expenses, costs, and attorneys' fees in bringing the Motion for Remand.

Dated:  September 30, 2025                Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, P.C.

/s/ *Paige E. Adaskaveg*
Paige E. Adaskaveg
Thomas Scott Thompson (admitted *Pro Hac Vice*)
Ryan T. Dougherty (admitted *Pro Hac Vice*)

Attorneys for Real Party in Interest/Defendant
CROWN CASTLE FIBER LLC and GTE
MOBILNET OF CALIFORNIA LIMITED
PARTNERHSHIP d/b/a VERIZON WIRELESS

/s/ *Robert C. May III*
Robert C. May III
COLANTUONO, HIGHSMITH & WHATLEY, PC
888 Prospect Street, Suite 200
La Jolla, CA 92037

Attorney for Respondent/Defendant CITY OF SAN
MATEO; the CITY COUNCIL of the City of San
Mateo; MATT FABRY in his capacity and Director
of the Public Works Department of the City of San
Mateo; and the SUSTAINABILITY &
INFRASTRUCTURE COMMISSION of the City of
San Mateo

DEFENDANTS' OPPOSITION TO PETITIONER'S NOTICE AND MOTION FOR REMAND –
CASE NO. 3:25-CV-06165